# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JILMAR RAMOS-GOMEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| REBECCA ADDUCCI, DEREK KLIFMAN, and MATTHEW LOPEZ, | ) ) ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |
| | ) |
| | ) |

## COMPLAINT

### Introduction

1. From December 14 through December 17, 2018, Plaintiff Jilmar Ramos-Gomez—a United States citizen and Marine Corps veteran—was wrongfully held in immigration detention while individuals from his own government attempted to deport him to Guatemala, a country to which he has never been.

2. During his detention, Plaintiff was deprived of adequate medical care and treatment for post-traumatic stress disorder (PTSD), which he acquired as a result of his military service, causing a severe deterioration of his mental health and physical well-being.

3. Plaintiff's unlawful detention was the result of an agreement between members of the Grand Rapids Police Department (GRPD), Calhoun County Correctional Facility (CCCF), and United States Immigration and Customs Enforcement (ICE), including Defendants, to target, detain, mistreat, and deport Plaintiff based solely on the fact that he is Latino.

4. Defendants knew that Plaintiff was a United States citizen and Marine Corps veteran; despite this, and based on racial animus, Defendants unlawfully detained Plaintiff and targeted him for deportation from the United States, his country of birth.

5. As a member of the United States military, Plaintiff selflessly sought to protect the rights and freedoms that all American citizens enjoy. Upon return from his service, Defendants, in cooperation with officers from the GRPD and CCCF, deprived Plaintiff of these same rights and freedoms, based solely on his race and Latino heritage.

6. Plaintiff brings this action pursuant to 42 U.S.C. §§ 1985 and 1986 to hold Defendants accountable for violating his rights, and to redress the injury caused to him by Defendants' discriminatory and inexcusable conduct.

## Jurisdiction and Venue

7. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343.

8. Venue is proper under 28 U.S.C. § 1391(b). On information and belief, Defendant Adducci resides in this judicial district, all defendants are residents of this state, and a substantial part of the events or omissions giving rise to this claim occurred within this district.

## Parties

9. Plaintiff is a 28-year-old United States citizen and Marine Corps veteran who served a six-month tour in Afghanistan. He was born and raised in Michigan.

10. At all times relevant to her involvement in this case, Defendant Rebecca Adducci was the Field Office Director of ICE's Detroit Field Office. She has responsibility for actions in this district to identify individuals for immigration enforcement, transfer individuals to ICE custody, issue immigration detainers, detain individuals, deport individuals, and issue custody determinations. Her responsibilities include intervening to prevent the unlawful detention or deportation of U.S. citizens. She also oversaw the actions of Defendants Derek Klifman and Matthew Lopez. Defendant Adducci is sued in her individual capacity.

11. At all times relevant to his involvement in this case, Defendant Derek Klifman was an officer or agent of ICE and an employee of the United States government. He was responsible for the deportation of foreign nationals. Defendant Klifman is sued in his individual capacity.

12. At all times relevant to his involvement in this case, Defendant Matthew Lopez was an officer or agent of ICE and an employee of the United States government. He was responsible for the deportation of foreign nationals. Defendant Lopez is sued in his individual capacity.

## Factual Allegations

### Plaintiff Was Targeted By Defendants and Other Officers Based on His Race

13. On November 21, 2018, Plaintiff was suffering a mental health episode related to his post-combat PTSD, and found himself on the roof of the Spectrum Hospital in Grand Rapids. He was arrested by GRPD officers and brought to the Kent County Correctional Facility (KCCF), where he was booked on criminal charges.

14. At the time of his arrest, Plaintiff had in his possession his United States passport, his Marine Corps identification tags, and a REAL ID compliant Michigan driver's license that identified him as a veteran.

15. During the evening on November 21, a local news program aired a story about Plaintiff's arrest. The story included Plaintiff's name, which is

4

recognizably Latino, and included his booking photo, in which Plaintiff is recognizably Latino.

16. An off-duty GRPD officer, Captain Curt VanderKooi, saw the news program and sent an email to Defendant Derek Klifman, asking: "Could you please check his status?" Captain VanderKooi did not consult with anyone at GRPD regarding the status of the investigation before contacting ICE.

17. Captain VanderKooi had no prior interactions with or knowledge of Plaintiff, and had no reason to believe that Plaintiff was unlawfully present in the United States. He decided to refer Plaintiff to ICE based simply on what he learned from the news: that Plaintiff's name and appearance indicated that he was of Latino heritage. Stated differently, Captain Vanderkooi's decision to refer Plaintiff to ICE was motivated solely by Plaintiff's race and ethnicity.

18. On November 22, the day after Captain VanderKooi first referred Plaintiff to ICE, a KCCF employee emailed a copy of the facility's November 21 arrest log to the regional ICE office. The log listed Plaintiff's place of birth as "USA."

19. Even though the KCCF arrest log clearly showed that Plaintiff is a United States citizen, on November 23 Defendant Klifman forwarded Captain VanderKooi's message, to Defendant Lopez.

5

20. Less than an hour later, an individual at ICE ran a query about Plaintiff in the CBP/DHS NNSV database. Upon information and belief, that person was Defendant Lopez, Klifman, or both. The query generated a report that clearly stated Plaintiff's place of birth as Michigan, listed his Social Security Number, and noted that he had a REAL ID compliant driver's license.

21. That same day, a search was run by ICE on the eCISCOR database, maintained by U.S. Citizenship and Immigration Services (USCIS). The resulting report listed Plaintiff's social security number—but no alien number—and a military address. The report also indicated that Mr. Ramos-Gomez had filed a Form I-130 petition for a relative and that the petition was approved. Such petitions cannot be approved unless the filer is a citizen or has lawful status.

22. Defendants ignored this unequivocal evidence of Plaintiff's United States citizenship and military service. Instead, Defendant Lopez went to KCCF and conducted an interview lasting less than two minutes with Plaintiff, whose mental competence had already been flagged for review by a magistrate judge.

23. After that interview, and less than two hours after searches in United States government databases confirmed that Plaintiff was a United States citizen, Defendants issued a detainer for Plaintiff on the false grounds that Plaintiff was a foreign national unlawfully present in the United States.

24. The detainer was issued from ICE's Enforcement and Removal Operations (ERO) Detroit Field Office, which is run by Defendant Adducci.

25. Upon information and belief, as Director of ICE's ERO Detroit Field Office, Defendant Adducci is responsible for all detainers that are issue by the Office.

26. The detainer listed Plaintiff as a Guatemalan citizen.

27. Plaintiff has never set foot in Guatemala. He is not a citizen of Guatemala.

28. Defendants decided to issue a detainer for Plaintiff even though all of the evidence showed that Plaintiff was a United States Citizen. Defendants' actions were based solely on racial animus.

29. Defendant Lopez then emailed Captain VanderKooi: "I was able to interview [Plaintiff] at Kent County this morning, and he is a foreign national illegally in the U.S. Thank you for the lead he will be coming into our custody when he is released from his criminal case. Let me or Derek know if you ever have any other good leads."

30. A subsequent ICE Memorandum of Investigation dated that same day stated that "Upon review of database information, ICE/ERO Grand Rapids, MI determined the subject was amenable to DHS/ICE enforcement action. Based on this information an ICE Immigration Detainer was lodged." The Memorandum

listed the Detroit Field Office run by Defendant Adducci as the control office for the investigation and detainer. It further noted that Plaintiff was "pending a mental health review" ordered by a magistrate judge.

31. Plaintiff remained at KCCF based on his original arrest at the Spectrum Hospital for three weeks.

32. During this time, both GRPD and ICE received additional unequivocal evidence of Plaintiff's United States citizenship, further establishing that invidious discrimination motivated their actions:

    a. On November 26, Captain VanderKooi sent an email to Defendant Lopez and GRPD Detective Adam Baylis—the GRPD officer assigned to present Plaintiff's case to the prosecutor for potential criminal charges. The subject line of the email was "Spectrum Helicopter Pad Loco,"[1] a clear indication that Vanderkooi and Defendants were motivated by Plaintiff's race and ethnicity. The email stated: "It is not clear what mad intent was involved in this breach of hospital security but here is the report." A copy of the police report was attached, which noted that Plaintiff had his passport and "a pistol purchase permit" in his possession when arrested. In Michigan,

---

[1] Loco is a Spanish word meaning "crazy."

       a pistol purchase permit may be obtained only by a United States citizen or permanent resident.

    b. That same day, Detective Baylis informed the prosecutor that ICE would be taking custody of Plaintiff upon his release. The prosecutor responded immediately with alarm, noting Plaintiff's status as a veteran and the fact that he was in possession of his United States passport when arrested.

33. Despite all of this unequivocal evidence of Plaintiff's citizenship—and pursuant to their agreement—Defendants, Baylis and VanderKooi took no action whatsoever to revoke the false detainer.

34. On December 14, 2018, Plaintiff was to be released on bond. His mother arrived at KCCF to pick him up. Instead, she was told that he was in immigration custody.

35. As Plaintiff's mother tried desperately to locate her son, Plaintiff was transferred to ICE custody and transported to CCCF, which has a contract with ICE to house immigration detainees.

36. Two CCCF officers transferred Plaintiff to CCCF. They transported Plaintiff with his REAL ID compliant license, which explicitly identified him as a veteran, and made clear that he was lawfully present in the United States. Staff at CCCF included his REAL ID Complaint license in CCCF's log of his belongings.

37. Despite that, none of the CCCF officers or Defendants or any ICE agent stationed at the CCCF took any step to revoke the false detainer. Instead, on November 16, 2018, a Notice of Custody Determination was issued from ICE's Detroit Field Office. ICE also issued a Notice to Appear, charging Mr. Ramos-Gomez with being a citizen of Guatemala who was unlawfully present in the United States, and ordering him to appear for a hearing in Detroit.

38. As a result of Defendants' actions, Plaintiff spent three days at CCCF in ICE's custody, during which time Defendants initiated removal proceedings against Plaintiff.

39. While Plaintiff was at CCCF, CCCF officers, operating under contract with ICE, ridiculed and mistreated Plaintiff and other Latinos who were in their custody.

40. During his unlawful detention at CCCF, Plaintiff suffered a crisis related to his mental health and his condition severely deteriorated. Plaintiff was denied necessary medical care while at CCCF.

41. While Plaintiff was detained at CCCF, the Calhoun County Sherriff's Office sent regular emails to ICE's ERO Detroit Field Office with reports identifying and providing information on all detainees that were being held in ICE custody at CCCF. These reports identified and provided information about Plaintiff.

42. Plaintiff was released on December 17, 2018, only after the intervention of his attorney.

43. Plaintiff's condition had deteriorated so severely that upon his release from CCCF he appeared not to recognize his own mother or his own home. He required weeks of inpatient hospital treatment.

44. The events above, beginning with the email communication between Captain VanderKooi and Defendant Klifman targeting Plaintiff based on his race and ethnicity, were not an isolated incident. Between 2017 and 2019, Defendant Klifman, Defendant Lopez, and other ICE agents engaged in at least 87 email exchanges with Captain VanderKooi. These emails frequently inquired into the immigration "status" of various individuals. Upon information and belief, all of these individuals were Latinos or members of other ethnic minorities. Some of these individuals were victims of crimes.

45. Captain VanderKooi, Defendants, and other unknown officers from GRPD, ICE, and CCCF had an agreement to target, detain, and deport Latino individuals or other individuals of color without valid reason and based solely on racial animus.

## Plaintiff's Damages

46. As a result of Defendants' misconduct, Plaintiff spent three days unlawfully incarcerated at CCCF, where he was ridiculed, mistreated, and denied

necessary medical care. While Plaintiff was deprived of his liberty, his mother tried desperately to secure his release and prevent his deportation. Plaintiff's unlawful detention caused a severe deterioration of his mental health, exacerbated his PTSD, and resulted in physical sickness and suffering.

47. Following his shocking and egregious mistreatment by Defendants, Plaintiff rarely leaves the house. He is afraid to interact with law enforcement officers and rarely engages in activities he used to enjoy, such as exercising, volunteering, spending time with friends and family, and supporting fellow veterans as they adjust to civilian life. Plaintiff feels as though he has been rejected and betrayed by the very country for which he fought and suffered.

## COUNT I
## 42 U.S.C. § 1985(3) – Conspiracy
## Defendants Adducci, Klifman and Lopez

48. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

49. Defendants entered into an agreement, as discussed in the preceding paragraphs, with Captain VanderKooi and other ICE, GRPD, and CCCF officers, for the purpose of depriving Plaintiff of the equal protection of the law. Specifically, Defendants engaged in communications with those officers to target Plaintiff and other individuals of color for immigration enforcement and deportation, based solely on their race or ethnicity. Defendants also agreed with

other officers from ICE, GRPD and CCCF to ignore unequivocal evidence of citizenship or lawful presence when targeting Plaintiff and other individuals of color for immigration enforcement. The conspiracy included, but may not have been limited to, racially profiling Plaintiff, detaining him, and deporting him.

50. Defendants performed several overt acts in furtherance of this conspiracy, including making false statements about Plaintiff's citizenship, issuing a detainer for Plaintiff, and detaining Plaintiff in violation of his Constitutional rights, including his right to equal protection of the law.

51. The conspiracy between Defendants, Captain VanderKooi, and other ICE, GRPD and CCCF officers and the actions taken in furtherance thereof were motivated by racial animus.

52. As a result of Defendants' conspiracy and the actions taken in furtherance thereof, Plaintiff suffered damages, including but not limited to violations of his Constitutional rights, a deprivation of liberty, physical injury, physical sickness, and emotional distress.

### COUNT II
### 42 U.S.C. § 1986 – Failure to Intervene
### Defendants Adducci, Klifman and Lopez

53. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

54. As discussed in the preceding paragraphs, Defendants were aware and had information in their possession showing that Plaintiff was a United States citizen and veteran, that he was being targeted for immigration enforcement because of his race or ethnicity, that an immigration detainer had been issued, that he would be transferred to immigration custody for deportation following his release from KCCF, and that, after that transfer, he was being detained in CCCF even though he was lawfully present in the U.S. and is a United States citizen.

55. Despite this knowledge, Defendants refused or otherwise failed to take action to intervene and prevent the unlawful detention of Plaintiff and the violations of his Constitutional rights.

56. Defendants, as ICE directors, officers or agents, had the power, ability, and obligation to intervene to prevent Plaintiff's unlawful detention.

57. As a result of this refusal to intervene, Plaintiff suffered violations of his Constitutional rights, a deprivation of liberty, physical injury, physical sickness, and emotional distress.

## Prayer for Relief

WHEREFORE, Plaintiff Jilmar Ramos-Gomez respectfully requests that this Court enter judgment in his favor against Defendants, awarding compensatory damages, punitive damages, attorney's fees and costs, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff Jilmar Ramos-Gomez demands a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all issues so triable.

Dated: November 22, 2019

                                                  Respectfully submitted,

                         BY:        /s/ Miriam J. Aukerman
                                         One of Plaintiff's Attorneys

Anand Swaminathan*
Megan Pierce*
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, IL 60607
T: (312) 243-5900
F: (312) 243-5902
megan@loevy.com

Miriam Aukerman (P63165)
Elaine Lewis*
American Civil Liberties Union of Michigan
Western Michigan Regional Office
1514 Wealthy Street, SE, Suite 260
Grand Rapids, MI 49506
maukerman@aclumich.org
T: (616) 301-0930
F: (616) 301-0640

Daniel S. Korobkin (P 72842)

15

American Civil Liberties Union
   Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
T: (313) 578-6824
F: (313) 578 6811
dkorobkin@aclumich.org

*Eastern District of Michigan admission forthcoming.